CONSTANCE M. EVERY, )
)
    Plaintiff, )
)
v. )         No. 1:26-cv-85-CEA-MJD
)
CITY OF CHATTANOOGA, *et al.*, )
)
    Defendants. )

## MEMORANDUM AND ORDER

Plaintiff Constance Every ("Plaintiff") filed this case pro se and without prepayment of fees against the City of Chattanooga, the Chattanooga Police Department, and two officers with the CPD, Andrew Doub and Hunter Morgan (the "City," "CPD," the "Officers," and together, "Defendants"). Currently before the Court are (1) Plaintiff's application for leave to proceed *in forma pauperis* ("IFP") [Doc. 1]; and (2) Plaintiff's First Amended Complaint [Doc. 7], which is subject to screening pursuant to 28 U.S.C. § 1915(e). As set forth below, there are deficiencies in Plaintiff's IFP application and in her First Amended Complaint. Plaintiff will be required to submit an updated IFP application and a Second Amended Complaint if she wishes to pursue this case further. No summons will issue at this time.

## I.    IFP APPLICATION

Pursuant to 28 U.S.C. § 1915(a)(1), the Court "may authorize the commencement . . . of any suit, action or proceeding, civil or criminal . . . without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets such prisoner[1] possesses

---

[1] Although the statute uses the term "prisoner," § 1915 "applies to non-prisoner indigent litigants as well as prisoners." *Zarazoga v. Litton Loan Serv.*, No. 1:10-CV-4117-RWS-AJB, 2011 WL

that the person is unable to pay such fees or give security therefor." In other words, to proceed IFP, Plaintiff must submit an affidavit showing she cannot pay the filing fee while still being "able to provide [her]self and dependents with the necessities of life." *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339 (1948) (internal quotation marks omitted).

Plaintiff's IFP application is deficient in several ways [Doc. 1]. For example, she writes that she receives a pension from the Department of Veterans Affairs plus Social Security benefits, but she does not list the amount. Plaintiff filed a second, unrelated lawsuit about six weeks after she filed this one, Case No. 1:26-cv-126-CLC-MJD ("Every II"). She is seeking IFP status in Every II as well. She lists the amount of her VA and SSA income in Every II as $5,255 per month.

Also, in this case, she lists a monthly expense of $1,862 for "credit cards," but the record reflects that this figure represents the total balance she owes. [*See* Doc. 1 at Page ID # 6]. In Every II, she writes that her monthly payment is $200 for this same debt (or what at least appears to be the same debt). [*See* Case No. 1:26-cv-126, Doc. 1 at Page ID # 7]. Applying $200 in this case, Plaintiff's monthly expenses total $4,150 ($1,700 + $100 + $89 + $135 + $400 + $756 + $350 + $100 + $150 + $20 + $200 + $50 + $100).[2]

Accordingly, with a monthly income of $5,255 and monthly expenses of $4,150, the record reflects Plaintiff is able to pay the filing fee while still affording the necessities of life. Nevertheless, in an abundance of caution, the Court will allow Plaintiff to file a new, properly

---

13319891, at *1 n.2 (N.D. Ga. Jan. 28, 2011) (citations omitted). The Sixth Circuit has held that the use of the phrase "prisoner possesses" is a "typographical error in the final version of the statute," and that "Congress actually intended the phrase to be 'person possesses.'" *Floyd v. U.S. Postal Serv.*, 105 F.3d 274, 275 (6th Cir. 1997), *superseded on other grounds as stated in Owens v. Keeling*, 461 F.3d 763, 774 (6th Cir. 2006).

[2] Plaintiff lists $4,956 as the total for her monthly expenses, which is incorrect if the $200 figure or the $1,862 figure is applied. [*See* Doc. 1 at Page ID # 7].

2

completed and sworn IFP application that includes *all* of the required information, including at least: (1) the amount and source of Plaintiff's income, including any benefits she receives from the VA and the Social Security Administration or any other sources; (2) the current amount of Plaintiff's monthly rent payment, as the record reflects she has moved since she filed her initial IFP application; (3) the current amount of Plaintiff's *monthly* living expenses, i.e., those expenses that are recurring as opposed to one-time payments.[3]

As an alternative to providing this information, Plaintiff may pay the filing fee.

## II.      SCREENING THE COMPLAINT

### a.        Standards

Because Plaintiff is attempting to proceed IFP, the Court is required to screen the First Amended Complaint before any summons are issued, pursuant to 28 U.S.C. § 1915(e)(2), and to recommend dismissal if the action, or any portion of the action, is frivolous, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See also Chase Manhattan Bank Mortg. Corp. v. Smith*, 507 F.3d 910, 915 (6th Cir. 2007).

The standard required by § 1915(e)(2) to properly state a claim for which relief can be granted is the same standard required by Federal Rule of Civil Procedure 12(b)(6). *Brand v. Motley*, 526 F.3d 921, 924 (6th Cir. 2008); *accord Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007). To avoid dismissal under Rule 12(b)(6), the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint need not state "detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

---

[3] For example, in Every II, Plaintiff lists a monthly "automobile repair" payment of $178. Because she does not list any balance owing or give any further detail regarding this expense, it does not appear to be a monthly living expense.

555 (2007) (citations omitted). But it must contain more than mere "labels and conclusions, . . . a formulaic recitation of the elements," or "naked assertions . . . without further factual enhancement." *Id.* at 555, 557 (citations omitted). In other words, the complaint must contain sufficient facts to "state a claim to relief that is plausible on its face." *Id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Twombly,* 550 U.S. at 556). Stated differently, "the court must be able to draw a 'reasonable inference that the defendant is liable for the misconduct alleged.'" *KSR Int'l Co. v. Delphi Auto. Sys.,* 523 F. App'x 357, 358–59 (6th Cir. 2013) (quoting *Iqbal,* 556 U.S. at 678).

In applying these standards, the Court also considers that the pleadings of pro se litigants are to be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Nevertheless, pro se plaintiffs must abide by "basic pleading standards," and the role of the court is not to "conjure allegations on a litigant's behalf." *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004) (quotation marks and citations omitted). "[P]ro se litigants are not relieved of the duty to develop claims with an appropriate degree of specificity." *Kafele v. Lerner, Sampson, Rothfuss, L.P.A*, 161 F. App'x 487, 491 (6th Cir. 2005).

Finally, federal courts are courts of limited jurisdiction. When presented with a case, federal courts "presume" they lack jurisdiction until the party asserting jurisdiction demonstrates otherwise. *Renne v. Geary*, 501 U.S. 312, 316 (1991) (citing *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 546 (1986)). If at any time the Court determines it lacks subject matter jurisdiction, the Court "must dismiss the action." Fed. R. Civ. P. 12(h)(3).

**b.** **Analysis**

In her First Amended Complaint, Plaintiff alleges:

4

9. On or about March 23, 2026, Plaintiff stood alone on a public sidewalk in Chattanooga, Tennessee holding a sign boycotting a local business.

10. Plaintiff remained stationary and did not obstruct pedestrian traffic. When pedestrians approached, Plaintiff moved to allow passage.

11. The sidewalk is a traditional public forum for expressive activity.

12. Prior to the incident, Plaintiff contacted city officials and was informed that no permit was required for a single individual holding a sign.

13. Plaintiff relied on this representation and engaged in expressive activity consistent with that guidance.

14. Defendant officers approached Plaintiff and ordered Plaintiff to leave the sidewalk.

15. When asked for justification, an officer stated that Plaintiff had to leave because the business owner did not want Plaintiff standing in front of the location.

16. The officer did not initially cite any law prohibiting Plaintiff's conduct.

17. Only after Plaintiff questioned the legality of the order did the officer reference a state obstruction statute.

18. Plaintiff was not obstructing pedestrian traffic at any time.

19. On a subsequent day, a supervising officer stated that Plaintiff was required to leave due to the "size of the sidewalk," not because of obstruction.

20. These inconsistent justifications demonstrate that the enforcement action lacked a lawful basis.

21. Similarly, situated individuals, including other demonstrators, were allowed to engage in expressive activity on sidewalks without interference.

22. Defendants selectively enforced rules against Plaintiff due to Plaintiff's protected speech activity.

[Doc. 7 at Page ID # 25–26].

Based on these facts, Plaintiff alleges her rights under the First and Fourteenth Amendments to the United States Constitution were violated, as well as her rights under Article I,

5

Section 19 of the Tennessee Constitution. She seeks $1 million in compensatory damages, a declaration that "Defendants' actions violated Plaintiff's constitutional rights;" "Injunctive relief preventing similar future conduct," and costs including attorney fees [Doc. 7 at Page ID # 27].

Plaintiff's First Amended Complaint as drafted is deficient. She correctly cites to 42 U.S.C. § 1983 as the basis for bringing her civil rights claims in federal court. However, she does not allege any facts regarding the roles that the Officers played in the incident, nor does she allege any facts regarding the nature of her sign, her "boycott," or the signs, activities, and location of the alleged "other demonstrators." She also does not allege any facts that would support a claim against the City of Chattanooga. *See Jordan v. Blount Cnty.*, 458 F. Supp. 3d 870, 883 (E.D. Tenn. 2020) ("A municipality may not be held liable under § 1983 on a *respondeat superior* theory, in other words, solely because it employs a tortfeasor[.] Instead, a plaintiff must show that through its deliberate conduct, the municipality was the moving force behind the injury alleged." (quotation marks and citations omitted)). Moreover, the "Chattanooga Police Department is not a legal entity amendable to being sued under 42 U.S.C. § 1983." *Stewart v. Red Bank Police*, No. 1:16-cv-345-TAV-CHS, 2018 WL 1143595, at *2 (E.D. Tenn. Mar. 2, 2018) (quoting *Moore v. Chattanooga Police Dep't*, No. 1:08-cv-174, 2008 WL 3896114, at *3 (E.D. Tenn. Aug. 19, 2008)) (other citations omitted).

Rather than recommend dismissal at this stage, the Court will order Plaintiff to further amend her claims to address the deficiencies with her claims as drafted and attempt to state a proper claim over which this Court has jurisdiction.

## III.   CONCLUSION

For the reasons set forth above, if Plaintiff intends to pursue this case further, she is **ORDERED** to file the following on or before **JULY 31, 2026:**

(1) a new, properly completed, sworn IFP application that complies with this order and which allows the Court to determine whether Plaintiff is able to pay the basic necessities of life while still being able to pay the filing fee in this case; and

(2) an amended complaint, titled, "Second Amended Complaint," which states a claim that meets the standards set forth herein.

Plaintiff is **NOTIFIED** that the Court will only address the merits of her claims that directly relate to her original and First Amended Complaint. Plaintiff **SHALL NOT** attempt to set forth in her Second Amended Complaint any claims that do not so relate, and she is advised that any such unrelated claims will be **DISMISSED**. Plaintiff is further **NOTIFIED** that the Second Amended Complaint will be the sole operative complaint the Court considers, and therefore, it must be complete in itself. It may not incorporate or refer to any other filings in this case. The Second Amended Complaint will likewise be subject to screening under § 1915(e) before any summons may be issued.

If the required documents are not timely and properly submitted, the case will be dismissed based on Plaintiff's failure to prosecute and failure to obey the Court's order. *See* Fed. R. Civ. P. 41(b); *Carpenter v. City of Flint*, 723 F.3d 700, 704 (6th Cir. 2013) ("It is well-settled that a district court has the authority to dismiss sua sponte a lawsuit for failure to prosecute."). The Clerk is respectfully directed to mail to Plaintiff a blank IFP application along with a copy of this order to the address Plaintiff has provided.

Finally, pursuant to Eastern District of Tennessee Local Rule 83.13,[4] Plaintiff is **REQUIRED** to immediately inform the Court, in writing, of any changes to her address. Failure

---

[4] The Court's Local Rules are available at:
https://www.tned.uscourts.gov/sites/tned/files/localrules.pdf.

to provide a correct address to this Court within fourteen days of any change in address may result in the dismissal of this action.

SO ORDERED.

ENTER:

/s/ _____
MIKE DUMITRU
UNITED STATES MAGISTRATE JUDGE

8